# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JOHN FLYNN *et al.*,                    :
                                    :

               Plaintiffs,        :     Civil Action No.:    03-0745 (RMU)
                                      :

               v.               :     Document Nos.:    26, 27, 28, 31, 32
                                      :

VEAZEY CONSTRUCTION CORP., and   :
VEAZEY ENTERPRISES, INC.,                    :
                                      :

               Defendants.     :

## MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' JURISDICTIONAL MOTIONS[1];
GRANTING IN PART AND DENYING IN PART THE PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT; DENYING THE DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGEMENT;
AND DENYING THE DEFENDANTS' MOTION TO STRIKE AFFIDAVIT

## I. INTRODUCTION

This matter comes before the court on the defendants' motion in limine, the defendants'

motion to strike evidence and arguments pertaining to post-contract-expiration events (together,

the "jurisdictional motions"), the defendants' motion for partial summary judgment regarding the

plaintiffs' alter ego theory, the plaintiffs' motion for summary judgment and the defendants'

motion to strike an affidavit.  The plaintiffs, fiduciaries and trustees of the Bricklayers & Trowel

---

[1]     The defendants have filed a motion in limine and a motion to strike evidence and
arguments.  Because these motions essentially dispute this court's jurisdiction and because these motions
contain largely the same arguments, the court refers to them jointly as the jurisdictional motions.

Trades International Pension Fund (the "IPF"),[2] seek to recover delinquent contributions under

the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Because

the court does not have jurisdiction to consider the plaintiffs' claims regarding the defendants'

statutory obligations incurred after the expiration of the collective bargaining agreement ("CBA")

between defendant Veazey Construction Corporation ("Veazey Corporation") and the plaintiffs

and because the court may consider evidence relating to the time period after the CBA expired,

the court grants in part and denies in part the defendants' jurisdictional motions.

The plaintiffs, for their part, move for summary judgment, arguing that the defendants are

alter egos jointly and severally liable for each other's debts and that each is subject to the

obligations of the CBA. The plaintiffs further argue that the court should order the defendants to

pay for obligations incurred both before and after the CBA expired. The defendants also move

for summary judgment on the alter ego issue and argue that the court, in making its determination

on the alter ego issue, cannot consider evidence relating to the time period after the CBA expired

(the defendants' summary judgment motion repeats many of the arguments contained in their

jurisdictional motions). Because the evidence in this case, including evidence relating to the time

period after the CBA expired, shows that defendant Veazey Enterprises, Inc. ("Veazey

Enterprises") is the alter ego of defendant Veazey Construction, the court grants in part and

---

[2]     The Bricklayers & Trowel Trades International Pension Fund (the "IPF") is an "employee benefit plan" within the meaning of § 3(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3), and is a "multi-employer plan" within the meaning of § 3(37) of ERISA, 29 U.S.C. § 1002(37). Compl. ¶ 3 (citing 29 U.S.C. § 1002(3), (37)). The IPF brings this action on its own behalf and on behalf of the Bricklayers & Allied Craftworkers International Health Fund, the International Masonry Institute, the Bricklayers and Allied Craftworkers International Union ("BAC"), the Bricklayers Gulf Coast Pension Fund, the Bricklayers Apprenticeship and Training Fund of Houston-Galveston and BAC Processing Office (collectively, "the plaintiffs"). Joint Statement of Case at 1-2.

denies in part the plaintiffs' motion for summary judgment and denies the defendants' motion for

partial summary judgment.  Finally, the court denies the defendants' motion to strike one of the

plaintiffs' affidavits because that affidavit is not inherently inconsistent with the affiant's prior

deposition testimony.  The court, however, also denies the plaintiff's motion for summary

judgment as it relates to the amount of damages because the affidavit creates a credibility issue

that must be reserved for resolution at trial.

## II.  BACKGROUND

### A.  Factual Background

G.W. Veazey and Peggy Veazey founded Veazey Corporation in the early 1960s as a

masonry contractor serving the Houston, Texas, commercial construction market.  Defs.' Mot.

for Partial Summ. J, Proposed Findings of Uncontroverted Fact ("Defs.' Statement") ¶ 1.  G.W.

Veazey managed the business until his death in 1993.  *Id.*  Following G.W. Veazey's death,

Peggy Veazey became the sole stockholder of Veazey Corporation and her son, David Veazey,

became its president.  *Id.*  In April 1995, David Veazey acquired ten percent of the total

outstanding stock of Veazey Corporation from his mother.  *Id.*  Although David Veazey's mother

remained the majority owner of Veazey Corporation, David Veazey controlled the company's

operations.  Pls.' Mot. for Summ. J., Ex. C ("Dep. of David Veazey") at 15.

In April 1998, David Veazey, his wife Nell Veazey, and Sharon Stelter founded Veazey

Enterprises.  *Id.* ¶ 3.  Sharon Stelter was the bookkeeper for Veazey Corporation and continued to

serve in this position after the creation of Veazey Enterprises.  Pls.' Mot. for Summ. J., Local

Rule 56.1 Statement of Material Facts as to Which There is No Genuine Dispute ("Pls.'

3

Statement") ¶ 26.  The plaintiffs allege that although Veazey Enterprises was technically

incorporated by Sharon Stelter, she only paid for the cost of the corporate formation documents,

while the remainder of the financing came from David and Nell Veazey.  *Id.* ¶ 22

On May 1, 2001, David Veazey executed Veazey Corporation's final CBA with the

plaintiffs.  Pls.' Statement ¶ 10.  On February 22, 2002, David Veazey notified the plaintiffs of

Veazey Corporation's desire to terminate the CBA, which consequently expired on April 30,

2002.  *Id.* ¶ 12.  Veazey Corporation thus ended its thirty-year relationship with the plaintiffs.

Pls.' Mot. for Summ. J. at 5.  The defendants claim that Veazey Corporation terminated the CBA

because it was planning to shut down its operations.  Defs.' Statement ¶ 2.  The defendants allege

that Veazey Corporation ceased its operations on April 30, 2002 and, since that time, has only

been involved in collecting outstanding invoices for work previously performed.  *Id.*

The defendants allege that prior to April 30, 2002, Veazey Corporation and Veazey

Enterprises were "two separate companies, with separate ownership and management, engaging

in different businesses for different purposes, with separate sources of business, and whose

sharing of office space was subject to arms-length transactions."  Defs.' Mot. for Partial Summ.

J. at 2.  Specifically, the defendants claim that, before April 30, 2002, "the extent of the business

relationship between Veazey [Corporation] and Veazey Enterprises were occasional referrals, a

shared office building and receptionist, and some shared equipment, although any uses of

property and equipment were subject to arms-length lease and use agreements."  Defs.' Reply to

Pls.' Opp'n to Defs.' Mot. for Partial Summ. J. ("Defs.' Reply")  at 8.

### B.  Procedural Background

On March 24, 2003, the plaintiffs filed their complaint pursuant to section 502(a)(3) of

ERISA, 29 U.S.C. § 1132(a)(3), and section 301 of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 185.  On March 8, 2005, the plaintiffs filed a motion for summary judgment and the defendants filed a motion for partial summary judgment and a motion in limine.  On April 8, 2005, the defendants filed a motion to strike evidence and arguments pertaining to post-contract-expiration events and a motion to strike one of the plaintiffs' affidavits.  The court now turns to these motions.

### III.  ANALYSIS

**A.  The Court Grants in Part and Denies in Part the Defendants' Jurisdictional Motions**

The defendants argue that the court lacks jurisdiction to consider any "evidence which concerns or relates to matters occurring after April 30, 2002, when the CBA at issue expired." Defs.' Mot. in Limine at 2; Defs.' Mot. to Strike at 2.  As a result, the defendants filed a motion in limine and a motion to strike to exclude: (1) the plaintiffs' claims for contribution after the CBA expired, and (2) evidence related to the plaintiffs' alter ego theory "which came into being after April 30, 2002."  Defs.' Mot. to Strike at 2.  The plaintiffs disagree and assert that the court may hear both their claims for contributions after the CBA expired and their evidence related to the plaintiffs' alter ego theory.  Pls.' Opp'n to Defs.' Mot. in Limine at 4.  For the reasons discussed below, the court concludes that it (1) does not have jurisdiction to consider the merits of the plaintiffs' claims regarding contributions due after the CBA expired and (2) has jurisdiction to consider all evidence dated after the CBA expired in deciding the alter ego issue.

### 1.  Legal Standard for Determining Jurisdiction for ERISA Claims

Generally, federal courts do not have jurisdiction over labor law claims and must defer to the exclusive competence of the National Labor Relations Board ("NLRB").  *Laborers Health and Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 543, n.4 (1988).  In 1980, however, Congress amended ERISA "to provide trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions."[3]  *Id.* at 541.  Nevertheless, Congress limited the district court's jurisdiction to the "collection of 'promised contributions.'"  *Id.* at 549.  Therefore, ERISA "does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes a violation of the NLRA."  *Id.*; *Painters' Pension Trust Fund of Wash., D.C. & Vicinity v. Manganaro Corp., Md.*, 693 F. Supp. 1222, 1223 (D.D.C. 1988) (holding that the court lacked jurisdiction to entertain actions for non-contractual remedies under the NLRA because sections 502(g)(2) and 515 of ERISA are limited in scope to the collection of "promised contributions").  The Supreme Court's "principal reason" for this conclusion was its "conviction that Congress' intent is so plain that policy arguments . . . must be addressed to the body that has

---

[3]      Analyzing Congress' amendment, the Supreme Court determined that an employer's duty to contribute to covered plans comes from both the employer's contractual obligations under the collective bargaining agreement ("CBA") and statutory obligations imposed by the National Labor Relations Act ("NLRA").  *Laborers Health and Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 545-56, n.4 (1988).  Specifically, the NLRA imposes a duty on the employer to continue to honor the conditions of an expired CBA pending negotiations on a new agreement.  *Id.* at 545, n.6.  Failure to honor these terms until either a new agreement or an impasse has been reached constitutes bad faith bargaining and a breach of sections 8(a)(1), 8(a)(5) and 8(d) of the NLRA.  *Advanced Lightweight Concrete*, 484 U.S. at 545, 545 n.6.  "Consequently, any unilateral change by the employer in the pension fund arrangements provided by an expired agreement is an unfair labor practice."  *Id.* (citing *NLRB v. Katz*, 369 U.S. 736, 743 (1962)).

the authority to amend the legislation, rather than one whose authority is limited to interpreting it." *Id.* at 551.

### 2. The Court Cannot Consider the Plaintiffs' Claims for Post-CBA Contributions

Relying on *Advanced Lightweight Concrete*, the defendants argue that the court does not have jurisdiction to entertain the plaintiffs' allegations that the defendants were required to continue making contributions to the IPF after the CBA expired. Defs.' Mot. to Strike at 4; Defs.' Mot. in Limine at 2. The defendants also argue the court does not have jurisdiction over allegations arising after the CBA expired because evidence dated after the CBA expired is inadmissible. Defs.' Mot. in Limine at 2. The plaintiffs, on the other hand, argue that the court has jurisdiction to hear their claims that the defendants failed to make contributions after the CBA expired and that the court may consider evidence dated after the CBA expired in analyzing the summary judgment motion (which is based on the alter ego theory). Pls.' Opp'n to Defs.' Mot. in Limine at 2, 4; Pl.'s Opp'n to Defs.' Mot. to Strike at 2.

The holding of *Advanced Lightweight Concrete* gives the court jurisdiction over claims for the collection of contribution amounts promised in a CBA and explicitly denies the court jurisdiction over claims for the collection of contribution amounts after the CBA expires. *Advanced Lightweight Concrete*, 484 U.S. at 549 (affirming the circuit court's conclusion that "[jurisdiction] is limited to the collection of 'promised contributions' and [ERISA] does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes a violation of the NLRA"). Although the holding of this seminal case is straightforward and unconditional, the plaintiffs argue that it is inapplicable to the present case for a number of reasons. First, they argue that "one of the

7

primary reasons for the Court's decision in *Advanced Lightweight Concrete* was the fact that

resolution of the plaintiff's claim for post-contractual contributions *would require the Court to*

*decide technical issues of labor law*." Pls.' Opp'n to Defs.' Mot. in Limine at 6 (emphasis in

original). But, the *Advanced Lighweight Concrete* Court did not distinguish between cases that

involve technical issues of labor law and those that do not. Indeed, the Court explicitly rejected

the notion that courts have jurisdiction over claims involving post-CBA obligations. *Id.* at 551

(emphasis added). The Court only considered policy arguments, such as the complexity of labor

law issues, to offer additional support for its holding.[4] *Id.* at 551-53.

Second, the plaintiffs argue that this case is distinguishable from *Advanced Lightweight*

*Concrete* because the only claim pursued by the plaintiffs in *Advanced Lightweight Concrete* was

a claim based on the defendants' failure to make post-CBA contributions. Pls.' Opp'n to Defs.'

Mot. in Limine at 8 (citing *Advanced Lightweight Concrete*, 484 U.S. at 542). Here, the

plaintiffs argue, they request delinquent contributions owed to them before and after the CBA

expired. *Id.* But, the court does not obtain jurisdiction just because a plaintiff joins its claim for

amounts due after the CBA expired with its claim for amounts promised under the CBA, that is,

amounts due before the CBA expired. *Advanced Lightweight Concrete*, 484 U.S. at 549 n.16.

---

[4]     Similarly, the plaintiffs' contention that the court has jurisdiction over the claims for post-CBA contributions as a consequence of the settlement agreement reached in the National Labor Relations Board ("NLRB") proceeding is without merit. This argument is an attempt to expand the meaning of contractual duty, which the Court explicitly refused to do in *Advanced Lightweight Concrete*. Specifically, in *Advanced Lightweight Concrete*, the Court rejected this attempt to broaden the employer's duties, holding that "as written, § 515 plainly refers to obligations that themselves arise from" the CBA. *Advanced Lightweight Concrete*, 484 U.S. at 549 n.16. Furthermore the Sixth Circuit, specifically addressing duties arising under a settlement agreement in a labor dispute, held that a settlement agreement does not confer an independent basis for the court's jurisdiction. *Bauer v. RBX Indus., Inc.*, 368 F.3d 569, 578-79 (6th Cir. 2004) (concluding that because a settlement voided a prior CBA agreement and because the parties did not bring a breach of contract claim, the court lacked jurisdiction to hear the employees' ERISA claims).

The holding in *Advanced Lightweight Concrete* gives courts jurisdiction only over contractual claims under the CBA and "any obligation to contribute funds for the period after the expiration of a CBA is . . . solely within the jurisdiction of the NLRB." *Advanced Lightweight Concrete Co.*, 484 U.S. at 549. Accordingly, the court does not have jurisdiction to consider the plaintiffs' claims for contributions that may have accrued after April 30, 2002.

### 3. The Court can Consider Post-CBA Evidence

The court's conclusion that it does not have jurisdiction over the plaintiffs' claims for post-CBA contributions, however, does not end the analysis of the defendants' jurisdictional motions. The defendant also asks the court to exclude evidence arising after the CBA expired. Defs.' Mot. in Limine at 2. The plaintiffs argue that even if the court does not have jurisdiction over the claims for post-CBA contributions, the court may still consider evidence dated after the CBA expired in considering the alter ego theory. Pls.' Opp'n to Defs.' Mot. in Limine at 3-4. Specifically, the plaintiffs assert that the dispositive issue is whether the defendants are currently alter egos, and thus liable for each other's debts under the CBA. *Id.* Consequently, they argue, the post-April 30, 2002 evidence is, in fact, relevant and admissible to this lawsuit. *Id.*

The defendants' argument that the court may not consider evidence arising after April 30, 2002 is unpersuasive for the same basic reason that the court concluded it does not have jurisdiction over the plaintiffs' claims for post-CBA contributions. That is, the holding of *Advanced Lightweight Concrete* grants the district court jurisdiction over the claims arising out of "promised contributions" under the CBA and to statutory contributions arising out of the NLRA. *Advanced Lightweight Concrete*, 484 U.S. at 549. Consequently, because the court has jurisdiction to consider the plaintiffs' claims that the defendants failed to make required

contributions prior to the expiration of the CBA, and because resolution of those claims depends upon the court's resolution of the alter ego issue, the court must be able to consider all evidence that reveals the exact nature of the relationship between the defendants.[5]  The court accordingly grants in part and denies in part the defendants' jurisdictional motions.[6]

### B.  The Court Grants in Part and Denies in Part the Plaintiffs' Motion for Summary Judgment and Denies the Defendants' Motion for Partial Summary Judgment

The plaintiffs move for summary judgment, arguing that defendant Veazey Construction failed to fulfill its contractual obligations prior to[7] the expiration of the CBA, and that defendant Veazey Enterprises, as the alter ego of defendant Veazey Construction, is liable for Veazey

---

[5]    Concluding otherwise would undermine ERISA's intent to strictly bind employers to their pension obligations by allowing companies to engage in the very type of evasive maneuvering that the alter ego doctrine is designed to prevent.  *Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 307 (1st Cir. 1998).  Specifically, "[t]he alter ego doctrine is meant to prevent employers from evading their obligations under labor laws and collective bargaining agreements through the device of making 'a mere technical change in the structure or identity of the employing entity . . . without any substantial change in its ownership or management.'"  *Id.* (citing *NLRB v. Hosp. San Rafael, Inc.*, 42 F.3d 45, 51 (1st Cir. 1994)).  Were it not for the alter ego doctrine, companies would be able to escape alter ego liability simply by operating as parallel entities and abiding by the requisite formalities until the expiration of the CBA.  *Id.*  Limiting evidence to the period when the CBA was in operation would thus make a successor sham entity immune from liability.  This result is antithetical to the very purpose of the alter ego doctrine.  *Id.* (noting that the alter ego doctrine is primarily applied to situations involving successor companies).

[6]    Because the court concludes that it has no jurisdiction to consider the plaintiffs' post-CBA claims, there is no need to address the defendants' argument that the plaintiffs never raised such claims in their original complaint.  Defs.' Mot. to Strike Evidence and Argument Pertaining to Post-Contract-Expiration Events at 5.  Nevertheless, the court notes that "Rule 8's liberal pleading standard requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2)), and the complaint is read only "to determine whether it provides the defendant with fair notice."  *Grogan v. Gen. Maint. Serv. Co.*, 764 F.2d 444, 449 (D.C. Cir. 1985).

[7]    The plaintiffs also argue that defendant Veazey Construction failed to fulfill its contractual obligations subsequent to the expiration of the CBA.  As discussed, *supra*, however, the court does not have jurisdiction to hear that claim.  Accordingly, the court denies the part of the plaintiffs' summary judgment motion requesting post-CBA contributions.

Corporation's contractual obligations under the CBA.[8]  Pl.'s Mot. for Summ. J. at 3.  The

defendants move for partial summary judgment, arguing that they are not alter egos and,

accordingly, Veazey Enterprises is not liable for Veazey Corporation's contractual obligations

under the CBA.  Defs.' Mot. for Summ. J. at 2.  Because the evidence demonstrates significant

similarities in the defendants' ownership, management, business purpose, operations and

employees, the court holds that the defendants are alter egos jointly and severally liable for their

debts under the CBA, and grants the plaintiffs' motion for summary judgment in part and denies

the defendants' motion.

### 1.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are

"material," a court must look to the substantive law on which each claim rests.  *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could

establish an element of a claim or defense and, therefore, affect the outcome of the action.

*Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

---

[8]      The plaintiffs also move for summary judgment motion on the issue of damages.  The
damages arguments are addressed in Section III.C., *infra*.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Greene*, 164 F.3d at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

## 2.  Legal Standard for Determining Alter Egos in the ERISA Context

In the ERISA context, alter ego liability enables ERISA trustees to "recover delinquent contributions from a sham entity used to circumvent the participating employer's pension obligations."  *Flynn v. R.C. Tile*, 353 F.3d 953, 958 (D.C. Cir. 2004).  Stated differently, the purpose of alter ego liability is "to prevent employers from evading their obligations under labor laws and collective bargaining agreements through the device of making a mere technical change in the structure or identity of the employing entity . . . without making any substantial change in its ownership or management."  *Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 307 (1st Cir. 1998) (internal citations omitted).

In order to determine whether two businesses are alter egos, the court "evaluates the similarities between the two enterprises in their ownership, management, business purpose, operations, equipment and customers." *R.C. Tile*, 353 F.3d at 958.  In this analysis, "no single factor is controlling and all need not be present to support a finding of alter ego status." *Belmont Concrete*, 139 F.3d at 308.

### 3.  The Defendants are Alter Egos

The primary question before the court is whether Veazey Enterprises is the alter ego of Veazey Corporation.  If so, Veazey Enterprises is bound by the CBA.  *R.C. Tile*, 353 F.3d at 959; *Belmont Concrete*, 139 F.3d at 309; *Cent. States, S.E. & S.W. Areas Pension Fund v. Sloan*, 902 F.2d 593, 596 (7th Cir. 1990) (holding that an alter ego of signatory employer is "obligated to honor the pension contribution terms of the [CBA]").  The plaintiffs assert that Veazey Corporation and Veazey Enterprises "shared ownership, management, employees, and equipment, carried on the same type of work in common geographical areas, operated out of the same location, maintained records and equipment in the same place, and transferred assets between the companies with little to no consideration and/or without documenting such transfers."  Pls.' Mot. for Summ. J. at 16.  The defendants, however, argue that the plaintiffs' "case almost entirely rests upon proof that is inadmissible" because the court may not consider the post-CBA conduct of the defendants, Defs.' Opp'n to Pls.' Mot. for Summ. J. at 3, and do not contradict any of the plaintiffs' assertions regarding alter ego liability or status.[9]

---

[9]     The defendants' response to the plaintiffs' statement of material undisputed facts is generally limited to asserting that some of the words are ambiguous and to dismissing as irrelevant those allegations concerning post-CBA matters.  Moreover, the defendants recognize that "Veazey Enterprises is today a different company than that presented in Defendants' own Motion for Partial Summary Judgment."  Defs.' Opp'n to Pls.' Mot. for Summ. J. at 13.

As discussed *supra*, the court can consider post-CBA evidence as it relates to the alter ego question. The post-CBA evidence reveals the following picture. David Veazey, a minority owner of Veazey Corporation, created Veazey Enterprises in 1998, Dep. of David Veazey at 85: 1-6, and the company was incorporated by his bookkeeper, Sharon Stelter, Pls.' Statement ¶ 21. Sharon Stelter was the majority owner and president of Veazey Enterprises until July 2002, even though she only paid for the cost of the corporate formation documents while the remainder of the money came from David and Nell Veazey. *Id.* Sharon Stelter also continued to work as a bookkeeper for Veazey Corporation while serving as president for Veazey Enterprises. *Id.* ¶ 34. David Veazey bought Veazey Enterprises from Sharon Stelter, replacing her as president, only three months after he terminated Veazey Corporation. *Id.* ¶¶ 25, 30.

The two companies' rosters of employees and officers overlap considerably. David Veazey, Nell Veazey, Sharon Stelter and Nick Koenig all held or currently hold executive positions at Veazey Enterprises.[10] *Id.* ¶ 32. Additionally, "seven of the eleven names included on a Veazey Enterprise list of employees can also be found at one time or another on the payroll records for Veazey [Corporation]." *Id.* ¶ 38. These employees work out of the same location as they occupied at Veazey Corporation, using some of the same equipment, the same fax number, and one of Veazey Corporation's former telephone lines. *Id.* ¶¶ 42, 45, 46. Some of this equipment was "shared" even before Veazey Corporation went out of business, and the defendants did not produce any written use agreements demonstrating that these arrangements were subject to arms-length transactions. *Id.* ¶¶ 52, 58. What's more, Veazey Corporation and

---

[10]     Out of these individuals only Nell Veazey, David Veazey's wife, was not formerly and officer of Veazey Corporation. Pls.' Mot. for Summ. J., Local Rule 56.1 Statement of Material Facts as to Which There is No Genuine Dispute ("Pls.' Statement") ¶ 32.

Veazey Enterprises also used several of the same service providers and are represented by the same law firm in this lawsuit.  *Id.* ¶¶ 64-65.  Even the receptionist, which the two companies shared, answers the phone in a manner that does not differentiate between them and did so during the period of their allegedly separate operations.  *Id.* ¶ 47.

Most importantly, although Veazey Enterprises was created to perform small repair work while Veazey Corporation only did large masonry projects, Veazey Enterprises began doing the same large masonry projects that were the focus of Veazey Corporation's business once the CBA expired.  *Id.* ¶ 39.  In fact, Veazey Enterprises did not earn a profit until this change took place.  *Id.* ¶ 39 n.3.  Ultimately, "Veazey Enterprises currently engages almost exclusively in the exact same type of work in the same basic geographical areas in Texas as Veazey Corporation engaged in before it ceased operating in April 2002."  *Id.* ¶ 41.  Moreover, whatever formalities were observed during the parallel operation of Veazey Corporation and Veazey Enterprises fell apart when Veazey Corporations ceased its operation and David Veazey gained full control of Veazey Enterprises shortly after the expiration of the CBA.  *Id.* ¶¶ 39, 40, 44.  In short, the evidence demonstrates significant similarities in the defendants' ownership, management, business purpose, operations, and employees, the court holds that Veazey Corporation and Veazey Enterprises are alter egos jointly and severally liable for each other's debts under the CBA.

The court emphasizes that none of the above factors are determinative on their own.  The alter ego doctrine, however, is such that "no single factor is controlling and all need not be present to support a finding of alter ego status."  *Belmont Concrete*, 139 F.3d at 308.  But, the combination of the above factors leads the court to conclude that Veazey Enterprises is the alter ego of Veazey Corporation.  Like in *R.C. Tile*, the asserted differences between the two

15

companies (specifically, the formalities which were observed during the period of parallel operation) are outweighed by the similarities in the companies' control and operations that occurred when Veazey Corporation went out of business and David Veazey bought Veazey Enterprises, *R.C. Tile*, 353 F.3d at 959.

### C.   The Court Denies the Defendants' Motion to Strike Kay LeBoeuf's Affidavit

The defendants move to strike Kay LaBoeuf's affidavit, arguing that the affiant, an auditor who conducted a payroll review of Veazey Construction for the purpose of calculating damages in this action, used improper mathematical methods and that her affidavit is inconsistent with her prior deposition testimony.  Defs.' Mot. to Strike LaBoeuf's Aff. at 2.  The plaintiffs argue that the court should not strike the affidavit because it is consistent with her deposition testimony "on all but one minor point."  Pls.' Opp'n to Mots. to Strike at 9.

### 1.   Legal Standard for Excluding an Affidavit as a Sham

A district court has discretion to strike sham affidavits. *Cook v. Babbitt*, 819 F. Supp. 1, 21 (D.D.C. 1993). The court, however, must distinguish between discrepancies that create "transparent shams" and discrepancies that create credibility issues.  *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). As one court stated,

> [t]o allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness . . . was stating the truth.

*Id.* at 953-954.  Accordingly, "[a]n opposing party's affidavit should be considered although it differs from or varies [from] his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility."  *Tippens*, 805 F.2d at 953 (quoting 6

16

MOORE'S FEDERAL PRACTICE ¶ 56.15[4] (2d ed. 1985)). The court, moreover, should not strike

an affidavit "when the affiant states in his affidavit that he was confused in his deposition or

where the affiant needs to explain portions of his deposition testimony that were unclear." *City*

*of St. Joseph, Mo. v. Sw. Bell Telephone*, 2006 WL 435598, at *5 (8th Cir. Feb. 24, 2006).

### 2.  Kay LeBoeuf's Affidavit is Not a Sham

The defendants contend that the affidavit of Kay LeBoeuf, the plaintiffs' auditor, "is

wholly unreliable and inconsistent with her deposition testimony" and thus should be disregarded

by the court when considering the plaintiffs' motion for summary judgment.  Defs.' Mot. to

Strike LeBoeuf's Aff. at 10.  The plaintiffs, conversely, assert that "nearly all of the alleged

inconsistencies cited by the Defendants are not inconsistencies at all."  Pls.' Opp'n to Defs.'

Mots. to Strike at 7.  In fact, the plaintiffs claim that there is only one minor inconsistency

between LeBoeuf's deposition testimony and her affidavit, which is insufficient to strike the

entire affidavit.  *Id.* at 8-9.  Furthermore, LeBoeuf corrected the inconsistency (and also corrected

another inconsistency she discovered during a review of her calculations) in her Supplemental

Declaration to this court.  Pls.' Opp'n to Defs.'  Mots. to Strike, Ex. A ("LeBoeuf  Supplemental

Decl.") at 2.  This change is reflected in the revised damage calculations.  *Id.*

Courts are especially lenient in accepting later testimony that may not be wholly

consistent with an earlier account where, like here, "the initial statement took the form of a

deposition rather than . . . an affidavit." *Pyramid Sec. Ltd.*, 924 F. 2d at 1123.  This is because

"[a] deponent may have been confused about what was being asked or have lacked immediate

access to material documents." *Id.*  This may have partially been the case here because during

her deposition, LeBoeuf stated several times that to answer the questions precisely, she needed to

review her spreadsheet reports.  Pls.' Opp'n to Defs.' Mots. to Strike, Ex. B ("LeBoeuf Dep.") at 36-37, 57, 85, 98.  Moreover, as LaBoeuf points out in her supplemental declaration, although she acknowledged the possibility of error, *id.* at 32, she only actually admitted to the existence of one mistake, *id.* at 68-69.  Thus, this is not the case where a party has given clear answers to unambiguous questions in a deposition and then seeks to create a genuine issue of material fact by filing an affidavit contradicting the prior deposition testimony.  *Reetz v. Hampton J. Jackson*, 176 F.R.D. 412, 414 (D.D.C. 1997) (internal quotations omitted).  The one inconsistency between the deposition testimony and the affidavit that the plaintiffs acknowledge[11] is insufficient to warrant striking LeBoeuf's entire affidavit.

As the plaintiffs themselves admit, however, the fact that LeBoeuf's deposition testimony is not entirely consistent with her affidavit "creates an issue of credibility to be resolved by the fact finder."  Pls.' Opp'n to Defs.' Mots. to Strike at 9.  Notably, the plaintiffs' damages calculations rest almost entirely upon LeBoeuf's affidavit.  Pls.' Mot. for Summ. J. at 16-19.  Accordingly, the court denies the plaintiffs' motion for summary judgment regarding the specific amount of damages and also denies the defendants' motion to strike LaBoeuf's affidavit.  *Avianca, Inc. v. Corriea*, 1992 U.S. Dist. Lexis 4709 at *10, n.2 (D.D.C. Apr. 13, 1992) (concluding that although a witness's testimony differed throughout his affidavits and his deposition testimony, the jury should be permitted to assess his credibility).[12]

---

[11]     This mistake concerned the Kay LeBoeuf's calculations for Daniel Clark, which she corrected in her supplemental declaration.  Pls.' Opp'n to Defs.' Mots. to Strike at 9-10, n.7.

[12]     Because the court denies the plaintiffs' motion for summary judgment with respect to the amount of damages, it does not address the other arguments that the parties make as to the manner in which damages should be calculated in this case.

**IV.  CONCLUSION**

For the foregoing reasons, the court grants in part and denies in part the defendants'

jurisdictional motions, grants in part and denies in part the plaintiff's motion for summary

judgment, denies the defendants' motion for partial summary judgment regarding the plaintiffs'

alter ego theory, and denies the defendants' motion to strike LeBoeuf's affidavit.  An order

consistent with this Memorandum Opinion is separately and contemporaneously issued this 27th

day of March 2006.

RICARDO M. URBINA
United States District Judge